IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARCUS WEAVER                                                                    PLAINTIFF

V.                                    CIVIL ACTION NO. 3:17-cv-00657-HTW-JCG

UNITED STATES et al.                                                            DEFENDANTS

**REPORT AND RECOMMENDATION**

BEFORE THE COURT is a Renewed Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 89), filed by Dr. Anthony Chambers, Dr. Roberto Martinez, Dr. Norma Natal, Nurse Natasha Hudson, and Nurse Jeneen Ratliff. *Pro se* Plaintiff Marcus Weaver, a former federal inmate, has not filed a response to Defendants' Renewed Motion. The Court previously dismissed some of Weaver's claims and transferred others. Weaver's only remaining claims in this suit are Eighth Amendment claims under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971) against Dr. Chambers, Dr. Martinez, Dr. Natal, Nurse Hudson, and Nurse Ratliff. Defendants' Renewed Motion to Dismiss or in the Alternative for Summary Judgment should be GRANTED. Dr. Chambers, a Public Health Services employee acting within the scope of his employment, is statutorily immune from Weaver's claims. The remaining Defendants are entitled to qualified immunity.

**BACKGROUND**

On March 15, 2016, Weaver filed a Complaint in the United States District Court for the Southern District of Illinois. (ECF No. 1). At that time, Weaver was a postconviction inmate in the custody of the Federal Bureau of Prisons serving a 151-month sentence for bank robbery with three years of supervised release. (ECF

No. 57-2, at 1). Weaver was released from prison on December 21, 2017 and remains on supervised release.

In his Complaint, Weaver advanced medical malpractice claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, against various medical providers at the Federal Correctional Institution in Yazoo City, Mississippi (FCI Yazoo), the Federal Correctional Institution in Pekin, Illinois (FCI Pekin), and the United States Penitentiary in Marion, Illinois (USP Marion). Weaver also alleged Eighth Amendment violations under *Bivens* against these medical providers. Weaver claimed that he was subjected to medical malpractice and cruel and unusual punishment because prison medical providers failed to diagnose his genital herpes until approximately four years after he first complained of testicular pain.

The United States District Court for the Southern District of Illinois screened Weaver's claims under 28 U.S.C. § 1915(a). The Southern District of Illinois dismissed the FTCA medical malpractice claims lodged against the individual defendants because the United States is the only proper defendant to an FTCA claim. (ECF No. 12, at 5-6) (citing 28 U.S.C. § 2679(b) and *FDIC v. Meyer,* 510 U.S. 471 (1994)). The Southern District of Illinois allowed the FTCA medical malpractice claims to proceed against the United States for the incidents or omissions arising at FCI Yazoo, finding that the claims passed threshold review. *Id.* at 7. The FTCA medical malpractice claims based on the events or omissions at FCI Pekin were dismissed because Weaver did not submit a personal affidavit and written report from a qualified health professional that is required under Illinois law to file a

2

complaint against the United States for medical malpractice. *Id.* at 7-8 (citing 735 Ill. Comp. Stat. §5/2-622(a) (West 2013)). Weaver dismissed the portion of his Complaint concerning medical care at USP Marion. (ECF No. 24, at 2).

The United States District Court for the Southern District of Illinois dismissed all of Weaver's Eighth Amendment *Bivens* claims against the remaining individual defendants without prejudice, finding that Weaver had failed to include enough factual allegations to state a claim. (ECF No. 12, at 8-12). The Southern District of Illinois allowed Weaver an opportunity to amend his Eighth Amendment *Bivens* claims. *Id.* at 10. After Weaver amended, the Southern District of Illinois allowed the *Bivens* claims to proceed for further consideration.

The United States then filed a motion to dismiss or for transfer of venue to the United States District Court for the Southern District of Mississippi. (ECF No. 36). On July 18, 2017, the United States District Court for the Southern District of Illinois granted the motion to change venue and transferred Weaver's entire case to this Court, including the claims against the FCI Pekin Defendants. (ECF No. 48). The Southern District of Illinois found that "plaintiff's claims occurred in both the Southern District of Mississippi and the Central District of Illinois. However, the majority of the named defendants likely reside in Mississippi and plaintiff's FTCA claim will be governed by the law of Mississippi." *Id.* at 3.

On November 13, 2017, after the case was transferred to this Court, Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, addressing Weaver's FTCA medical malpractice claim against the

3

United States concerning the medical care at FCI Yazoo and Weaver's Eighth Amendment *Bivens* claims against the FCI Yazoo and FCI Pekin individual defendants. (ECF No. 57).

The United States Magistrate Judge issued a Report and Recommendation on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Weaver did not file objections to the Report and Recommendation. The District Judge adopted the Report and Recommendation on September 18, 2019. As a result, the FTCA medical malpractice claim against the United States concerning the medical care at FCI Yazoo was dismissed because Weaver did not submit expert testimony as required to support the claim. The Eighth Amendment *Bivens* claims against the individual FCI Pekin medical providers were severed on grounds of improper joinder and transferred to the United States District Court for the Central District of Illinois where both venue and personal jurisdiction could be properly exercised. The recommendation that Weaver be granted additional time to serve the individual FCI Yazoo Defendants, namely Dr. Chambers, Dr. Martinez, Dr. Natal, Nurse Hudson, and Nurse Ratliff, was moot at the time of the District Judge's decision, because the individual FCI Defendants waived service of process after the Report and Recommendation was issued.

In their Renewed Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, the individual FCI Yazoo Defendants submit that Dr. Chambers, a member of the United States Public Health Service, is absolutely immune from suit under 42 U.S.C. § 233(a). Defendants urge that the remaining

individual FCI Yazoo Defendants are entitled to qualified immunity. Weaver did not respond to the Renewed Motion. He has not filed a pleading or otherwise corresponded with the Court since May, 1, 2018. (ECF Nos. 70-72).

## DISCUSSION

A. <u>Standard of Review</u>

Because matters outside the pleadings have been presented, the undersigned has considered Defendants' Renewed Motion as one seeking summary judgment. *See* Fed. R. Civ. P. 12(b); *Young v. Biggers,* 938 F.2d 565, 568 (5th Cir. 1991). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also Moore v. Miss. Valley State Univ.,* 871 F.2d 545, 549 (5th Cir. 1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. The movant need not, however, support the

5

motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Dr. Martinez, Dr. Natal, Nurse Hudson, and Nurse Ratliff assert qualified immunity. "The doctrine of qualified immunity protects public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ramirez v. Martinez,* 716 F.3d 369, 375 (5th Cir. 2013) (citation omitted). "A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010).

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will

be able to prevail at trial. *Nat'l Screen Serv. Corp. v. Poster Exch., Inc.,* 305 F.2d 647, 651 (5th Cir. 1962).

B. <u>Dr. Chambers is Statutorily Immune</u>

Under the Public Health Services Act, any commissioned officer or employee of the Public Health Service acting within the scope of his office or employment is entitled to absolute immunity from *Bivens* suits. 42 U.S.C. § 233(a) provides:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the office or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a).

It is undisputed that Dr. Chambers is now, and was at the time of the alleged incidents, a medical doctor employed by the Public Health Service as Clinical Director for the Health Services Department at FCI Yazoo. (ECF No. 57-6, at 1). Dr. Chambers has submitted a sworn Declaration attesting that his involvement with Weaver concerning the facts at issue occurred while Dr. Chambers was acting as a Public Health Services employee acting within the course and scope of his employment as Clinical Director at FCI Yazoo. *Id.* at 2. Weaver has submitted no evidence in response.

By its own terms, 42 U.S.C. § 233(a), limits recovery for any conduct relating to improper medical care by a Public Health Services employee to suits against the United States. *See Hui v. Castaneda,* 559 U.S. 799, 806 (2010). Dr. Chambers is statutorily immune from Weaver's Eighth Amendment *Bivens* claims. *See Montoya-Ortiz v. Brown,* 154 F. App'x 437, 439 (5th Cir. 2005); *Schrader v. Sandoval,* 1999 WL 1235234, *2 (5th Cir. Nov. 23, 1999); *Herrera v. Pearson,* No. 5:12-cv-123-DPJ-FKB, 2013 WL 2637723, *6 (S.D. Miss. June 12, 2013); *Rankin v. Pearson,* No. 5:11-cv-138-DCB-RHW, 2013 WL 1305517, *8 (S.D. Miss. Mar. 26, 2013); *Walker v. Reese,* No. 5:06-cv-154-DCB-MTP, 2008 WL 4426123 (S.D. Miss. Sept. 25, 2008), aff'd, 364 F. App'x 872 (5th Cir. 2010); *O'Cull v. Bureau of Prisons,* No. 5:09-cv-62, 2009 WL 6637968, *3 (S.D. Miss. Dec. 16, 2009), report and recommendation adopted, 2010 WL 2671978, *4 (S.D. Miss. June 30, 2010). The Eighth Amendment *Bivens* claim against Dr. Chambers should be dismissed with prejudice.

   C.  <u>Dr. Martinez, Dr. Natal, Nurse Hudson, and Nurse Ratliff Are Entitled to Qualified Immunity</u>

"[T]here is an implied right of action against a federal actor who shows deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment." *Carlucci v. Chapa,* 884 F.3d 534, 538 (5th Cir. 2018) (citing *Bivens,* 403 U.S. at 389, *Ziglar v. Abbasi,* 137 S.Ct. 1843, 1856-57 (2017)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Wilson v. Seiter,* 501

8

U.S. 294, 297 (1991); *see also Estelle v. Gamble,* 429 U.S. 97, 105 (1976). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell,* 463 F.3d 339 (5th Cir. 2006); *see Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991). "A showing of deliberate indifference requires the prisoner to submit evidence that prison officials '"refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."' *Id.* (quoting *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985)). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in a substantial harm" *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza,* 989 F.2d at 193-95).

1. <u>Dr. Martinez</u>

Dr. Martinez was Weaver's assigned primary care physician at FCI Yazoo. Weaver was housed at FCI Yazoo in 2011 and 2012. Weaver is suing Dr. Martinez because Dr. Martinez did not diagnose Weaver with genital herpes, even though

9

Weaver complained of lesions and burning sensations in the area of his penis. Weaver claims that his pre-existing mental health issues were exacerbated by Dr. Martinez's failure to diagnose genital herpes, causing Weaver "to wonder for years if he had a terminal illness such as HIV or Cancer." (ECF No. 30, at 22).

In his Amended Complaint, Weaver alleges that "as early as May 20, 2011," he was evaluated by Dr. Martinez and presented with "objective systems [of genital herpes]." (ECF No. 30, at 18). According to Weaver, he told Dr. Martinez that he was experiencing headaches, fever, leg pain, gut pain, and pain in his testicles. *Id.* Weaver claims that Dr. Martinez responded by telling him "to take some Ibuprofen." *Id.*

Weaver further alleges that on July 24, 2011, he "submitted an Inmate Request to Staff . . . . explaining he was in severe pain" and requested to see Dr. Martinez but Dr. Martinez was out of the office on vacation. *Id.* at 19. Weaver was seen by others on the Health Services Staff but complains that Dr. Martinez "did not leave any pain medication, follow-up care instructions, or referral to other medical staff, concerning [Weaver's] serious medical needs." *Id.* Upon his return from leave, Dr. Martinez examined Weaver, and according to Weaver "observed symptoms" of genital herpes but did nothing, telling Weaver that his ulcers, blisters, and lesions were nothing to worry about. *Id.* at 21-22.

Weaver alleges that from "September 2011 up to March 18, 2012," he "submitted numerous request slips" telling each Defendant that he was "in pain and experiencing symptoms of burning, lesions, ulcers, and blisters." *Id.* at 23. Weaver

10

claims that "all Defendants chose to literally ignore [his] symptoms." *Id.* Weaver admits that he was tested by Dr. Martinez for herpes, and the results were negative, but alleges that Dr. Martinez ignored a disclaimer warning that the test "should not be used as a diagnostic procedure without confirmation of the diagnosis by another medically established diagnostic product or procedure." *Id.* at 24. Weaver maintains that Dr. Martinez "reckless[ly] abandoned . . . basic . . . standard medical practice." *Id.* Weaver submits that while he was at FCI Yazoo, no Defendant "attempted to provide any follow-up procedure or protocol, although the need for additional testing was blatantly obvious due to the presence of numerous symptoms." *Id.*

Weaver has offered no evidence in support of his allegations against Dr. Martinez. Dr. Martinez has offered a sworn Declaration and excerpts from Weaver's medical records. The summary judgment evidence submitted by Dr. Martinez does not support Weaver's claims that Dr. Martinez ignored Weaver's complaints and objective symptoms of genital herpes. According to his Declaration, Dr. Martinez saw Weaver on May 20, 2011, for a chronic care visit because of Weaver's history of bipolar disorder and due to a sick call issue. (ECF No. 57-8, at 2). Weaver voiced no mental health concerns, submitting that he was doing well on his current medication. *Id.* Weaver mentioned that he was experiencing right testicular discomfort for about two days that started when he was walking and brushed his testicle to the side. *Id.* Weaver stated that the pain was subsiding every day since it began. *Id.* Upon exam, Weaver presented a normal scrotum with epididymal

11

tenderness. *Id.* A diagnosis of mild testicular strain was documented, and Weaver was instructed to avoid strenuous exercise. *Id.* Dr. Martinez avers that Weaver did not report any symptoms of headaches, fever, leg pain, or gut pain at the May 20, 2011, examination. *Id.* Weaver's temperature was normal, and he made no mention of genital herpes. *Id.* Dr. Martinez avers that on May 20, 2011, he had no reason to believe and did not believe that Weaver had genital herpes.

Dr. Martinez has no recollection regarding whether, prior to his vacation, he received an Inmate Request from Weaver. *Id.* Dr. Martinez does not process Inmate Requests but has reviewed Weaver's medical records which show that Weaver made two Inmate Requests on July 24, 2011. *Id.* In one Request, Weaver claimed he was sick all weekend with fever and pain in his groin area. *Id.* As a result of this Request, Weaver was seen by Nurse Ratliff and Dr. Natal on July 26, 2011, because Dr. Martinez was on vacation. *Id.* At the July 26, 2011, appointment, Dr. Natal diagnosed Weaver with genital warts. (ECF No. 57-9, at 2; ECF No. 57-11, at 2).

Weaver's second Inmate Request was processed, and Weaver was scheduled to see Dr. Martinez upon his return. Dr. Martinez examined Weaver on August 4, 2011, and treated him for genital warts using a topical medication with no complications. (ECF No. 57-8, at 3). Dr. Martinez saw no symptoms of genital herpes. *Id.* Weaver received follow-up care with Dr. Martinez on August 17, 2011; August 24, 2011; and August 31, 2011 and voiced no complaints. *Id.*

Dr. Martinez saw Weaver for a chronic care visit on March 9, 2012. *Id.* Weaver reported that his genital warts were back. *Id.* An examination showed

multiple genital warts. *Id.* at 4. A topical medication was applied to Weaver's warts without complication. *Id.* Weaver was instructed to follow up as needed. *Id.* Dr. Martinez did not observe symptoms of genital herpes. *Id.*

Dr. Martinez saw Weaver for a chronic care visit on April 18, 2012. *Id.* Weaver complained that his genital warts had returned. *Id.* In addition, Weaver, after explaining that he "never . . . told" anyone about experiencing these symptoms, reported that he had experienced blisters and an irritation sensation on his penis for over six years, with blisters appearing approximately three times per year. *Id.* A physical examination revealed "a dried up vesicle formation on [Weaver's] penile shaft near his preputium as well as genital warts. Herpes-1 and Herpes-2 antibody/Herpes virus antibody IgG were ordered." *Id.* Dr. Martinez "was unable to perform a herpes viral culture as the vesicles were dry and the test requires fluid from the vesicle." *Id.* Dr. Martinez prescribed topical medication to treat Weaver's genital warts. *Id.* Dr. Martinez avers that "Weaver's herpes test results were negative and no additional lesions were noted." *Id.*

Dr. Martinez examined Weaver on May 29, 2012, for treatment of Weaver's genital warts and observed no lesions. *Id.* The medical records indicate that Weaver voiced no other complaints. *Id.* Dr. Martinez saw Weaver for follow-up appointments to treat Weaver's genital warts on June 5, 2012; June 13, 2012; June 20, 2012; June 27, 2012; and July 17, 2012. *Id.* Medical records from these interactions reflect that no other lesions were noted, and Weaver voiced no complaints. *Id.*

13

Summary judgment in favor of Dr. Martinez is compelled because the burden in the qualified immunity analysis is Weaver's, and Weaver has not rebutted the defense of qualified immunity by establishing a genuine fact issue as to whether Dr. Martinez's conduct violated clearly-established constitutional law. Dr. Martinez's Declaration is replete with details of Weaver's medical treatment. When Weaver sought medical care, it was provided to him. When Weaver voiced complaints, they were addressed. Dr. Martinez tested Weaver for genital herpes, and the results were negative. Weaver has not shown that Dr. Martinez refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. *Brown v. Megg,* 857 F.3d 287, 289-90 (5th Cir. 2017); *see Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985); *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001). Dr. Martinez is entitled to qualified immunity, and the claims against him should be dismissed with prejudice.

2. Dr. Natal and Nurse Ratliff

With the assistance of Nurse Ratliff, Dr. Natal evaluated Weaver on July 26, 2011, while Dr. Martinez was away. Weaver alleges that he complained of "white papules, redness, discoloration, and lesions" on his penis. (ECF No. 30; at 19). Weaver acknowledges that Dr. Natal diagnosed him with genital warts and prescribed topical medication for genital warts but asserts that Dr. Natal "refused to schedule [him] for any further diagnostic testifying for his serious medical needs," which Weaver contends amounts to deliberate indifference. *Id.* at 20.

Dr. Natal and Nurse Ratliff have offered sworn Declarations. Dr. Natal avers that she reviewed Weaver's medical records and they "reveal no instance of complaints or any clinical signs, symptoms, or evaluation supporting a diagnosis of genital herpes." (ECF No. 57-9, at 1). At the July 26, 2011 appointment, Weaver complained of headaches, fever, and a "rash on his private part." (ECF No. 57-9, at 1; ECF No. 57-11, at 2). Weaver's temperature tested 98.8. (ECF No. 57-11, at 2). Weaver was advised to take Ibuprofen for his headaches. *Id.* A physical examination revealed tiny clusters of bumps to the shaft of Weaver's penis. *Id.* Dr. Natal diagnosed Weaver with genital warts and prescribed a topical medication. (ECF No. 57-9, at 2; ECF No. 57-11, at 2). A physical evaluation showed no symptoms of genital herpes, and Dr. Natal concluded that diagnostic testing was unnecessary. (ECF No. 57-9, at 2).

Outside of the July 26, 2011, clinical encounter, Nurse Ratliff processed two Inmate Requests made by Weaver on July 24, 2011, and scheduled him for two physician visits in response. (ECF No. 57-9, at 2). Nurse Ratliff processed a third Inmate Request made by Weaver on July 27, 2011, wherein Weaver complained that he was experiencing pain and a burning sensation in his penis area and demanded to have blood tests to determine the nature of his genitourinary problem. *Id.* Nurse Ratliff declined to schedule Weaver for a third appointment and advised Weaver "to purchase Ibuprofen for the relief of his headaches and if no relief of headaches after one week, to return to sick call." *Id.* Weaver made a fourth Inmate Request on July 28, 2011, that was not processed by Nurse Ratliff. As a result of the

15

fourth Request, Weaver was seen by Dr. Chambers and Nurse Hudson on July 29, 2011. (ECF No. 57-7, at 1-3).

Summary judgment in favor of Dr. Natal and Nurse Ratliff is compelled because Weaver has not rebutted the defense of qualified immunity by establishing a genuine fact issue as to whether Dr. Martinez's conduct violated clearly-established constitutional law. The fact that Dr. Natal did not diagnose Weaver with genital herpes during the one visit when Weaver was seen by Dr. Natal, and that Nurse Ratliff denied one of the three Inmate Requests by Weaver that she processed, does not rise to the level of deliberate indifference. Weaver has not established that these Defendants refused to treat Weaver, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. *Brown v. Megg,* 857 F.3d 287, 289-90 (5th Cir. 2017); *see Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985); *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001). Dr. Natal and Nurse Ratliff are entitled to qualified immunity, and the claims against them should be dismissed with prejudice.

3. <u>Nurse Hudson</u>

In Weaver's fourth Inmate Request, submitted on July 28, 2010, Weaver reported a burning sensation and pain in his penis. (ECF No. 57-10, at 1). Because Dr. Martinez was away, Weaver was seen by Dr. Chambers and Nurse Hudson on July 29, 2011. Medical records indicate that Weaver reported he had a genital lesion with a burning sensation and burning with urination. (ECF No. 57-7, at 1-3). Dr.

Chambers prescribed Weaver antibiotics and a topical medication for genital warts. Dr. Chambers indicated that Weaver was "due to see his regular MD" and concluded that Weaver "will be placed on callout." *Id.* at 2.

The claims against Dr. Chambers have been dismissed with prejudice. Summary judgment in favor of Nurse Hudson is compelled because Weaver has not rebutted the defense of qualified immunity by establishing a genuine fact issue as to whether Nurse Hudson's conduct violated clearly-established constitutional law. Nurse Hudson's only clinical encounter with Weaver was on July 29, 2011. (ECF No. 57-10, at 2). There is no proof that Nurse Hudson, who assisted Dr. Chambers, refused to treat Weaver, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for Weaver's serious medical needs. Nurse Hudson is entitled to qualified immunity, and the claims against her should be dismissed with prejudice.

## RECOMMENDATION

The Renewed Motion to Dismiss or in the Alternative Motion for Summary Judgment, filed by Dr. Chambers, Dr. Martinez, Dr. Natal, Nurse Ratliff, and Nurse Hudson should be GRANTED. All claims by Weaver should be dismissed with prejudice and a final judgment in favor of Defendants entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Role 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, after service of a copy of this Report and Recommendation, each party has fourteen (14) days to serve and file with the Clerk

of Court any written objections to it. Within seven days of service of objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Judge need consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions within fourteen (14) days of being served a copy is barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

  **SIGNED**, this 3rd day of June, 2019.

            s/ *John C. Gargiulo*

            JOHN C. GARGIULO
            UNITED STATES MAGISTRATE JUDGE